UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| DARREN DENARD DIXON,<br>    Petitioner,<br><br>V.<br><br>FRANCISCO QUINTANA,<br>    Respondent. | CIVIL ACTION NO. 5:17-204-KKC<br><br>**MEMORANDUM OPINION<br>& ORDER** |

\*\*\* \*\*\* \*\*\*

Inmate Darren Denard Dixon is confined at the Federal Medical Center ("FMC")-Lexington in Lexington, Kentucky. Proceeding without counsel, Dixon has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the manner in which the Bureau of Prisons ("BOP") has calculated his federal sentence. [R. 1] Dixon is currently serving concurrent sentences imposed in separate cases by the District Court for the District of South Carolina, Florence Division in *United States v. Darren Denard Dixon*, No. 4:11-CR-264-RBH (D.S.C. 2011) and *United States v. Darren Denard Dixon*, No. 4:07-CR-360-TLW-3 (D.S.C. 2007). Although the materials submitted by Dixon reflect that the BOP's sentence computation for Dixon results in a release date of July 12, 2017 [R. 1-2], Dixon argues that it was the intent of the sentencing court in his 2011 case that Dixon's release date be June 7, 2017. Dixon has also filed a motion for expedited disposition of his petition. [R. 5][1]

---

[1] According to the documents attached to Dixon's petition, he has exhausted his administrative remedies within the Bureau of Prisons by following the BOP's Administrative Remedy Program as described in Program Statement 1330.16. [R. 1-2]

The Court conducts an initial review of habeas corpus petitions. 28 U.S.C. § 2243; *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). A petition will be denied "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). The Court evaluates Dixon's petition under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At this stage of the proceedings, the Court accepts Dixon's factual allegations as true and construes all legal claims in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). However, having reviewed the § 2241 petition, the Court must deny it because Dixon has not set forth grounds entitling him to the relief he seeks.

I.     BACKGROUND

On September 29, 2008, pursuant to a plea agreement with the United States, Dixon pled guilty to one count of conspiracy to distribute narcotics in violation of 21 U.S.C. § 846 in the United States District Court for the District of South Carolina Florence Division. *United States v. Darren Denard Dixon*, No. 4:07-CR-360-TLW-3 (D.S.C. 2007) [Plea Agreement, Entry No. 231; Minute Entry, Entry No. 232; Guilty Plea, Entry No. 233] (Dixon's "2007 drug case"). On March 31, 2009, Dixon was sentenced to a term of one hundred months of imprisonment, to be followed by five years of supervised release. [*Id*. at Minute Entry, Entry No. 271; Judgment, Entry No. 273]

On May 8, 2010, Dixon escaped from custody while serving his sentence at Federal Correctional Institution ("FCI")-Williamsburg in Salters, South Carolina [*Id*. at Order, Entry No. 310] Accordingly, in February 2011, Dixon was indicted in the United States District Court for the District of South Carolina, Florence Division, on one count of knowingly escaping from custody from FCI-Williamsburg, in violation of 21 U.S.C § 751(a). *United States v. Darren*

*Denard Dixon*, No. 4:11-CR-264-RBH (D.S.C. 2011) [Indictment, Entry No. 2] (Dixon's "2011 escape case"). In June 2011, pursuant to a plea agreement with the United States, Dixon pled guilty to knowingly escaping from custody [*Id*. at Plea Agreement, Entry No. 52; Minute Entry, Entry No. 55], and on December 8, 2011, Dixon was sentenced to a term of seven months of imprisonment on the escape charge, to be followed by three years of supervised release [*Id*. at Judgment, Entry No. 119] The Judgment in Dixon's escape case also specified that his sentence for the escape charge was to run consecutive to Dixon's sentence for his drug charges imposed in 4:07-CR-360-TLW-3. [*Id*. at Judgment, Entry No. 119]

On July 16, 2015, while on supervised release for both his 2007 drug conviction and his 2011 escape conviction, Dixon was arrested by the Coweta County (Georgia) Sheriff's Department for Fraud Using Financial Transaction Card, Fraud Identity and Obstruction of Officers. *United States v. Dixon*, No. 4:07-CR-360-TLW-3 [Motion, Entry No. 346]; *United States v. Dixon*, No. 4:11-CR-264-RBH [Petition/Motion, Entry No. 138] According to the incident report, Dixon and a co-defendant were allegedly using multiple fraudulent credit cards and fictitious identification to purchase hundreds of dollars' worth of gift cards and Home Depot and Academy Sports. [*Id*.] On September 13, 2016, Chief Judge for the District Court of South Carolina Terry L. Wooten held a final hearing regarding the revocation of Dixon's supervised release in Dixon's 2007 drug case, revoked Dixon's supervised release, and committed Dixon to the custody of the BOP for a total term of nine months imprisonment with no supervised release to follow. *United States v. Dixon*, No. 4:07-CR-360-TLW-3 [Minute Entry, Entry No. 365; Judgment for Revocation, Entry No. 369]

On October 18, 2016, Judge R. Bryan Harwell, United States District Judge for the District of South Carolina, held a final hearing regarding the revocation of Dixon's supervised release in

Dixon's 2011 escape case. *United States v. Dixon*, No. 4:11-CR-264-RBH [Minute Entry, Entry No. 157] On October 20, 2016, Judge Harwell entered a Judgment revoking Dixon's supervised release in that case and committing Dixon to the custody of the BOP to be imprisoned for a total term of nine months, with no supervised release to follow. [*Id*. at Judgment, Entry No. 159] The Judgment further stated that the date of imposition of Judgment was October 18, 2016 and that the sentence imposed pursuant to the Judgment shall run concurrent with the sentence imposed in Case No. 4:07-CR-360-TLW-3 (Dixon's 2007 drug case) [*Id*.]

In his § 2241 petition, Dixon challenges the BOP's calculation of his current release date. [R. 1] Although the BOP has set his release for July 12, 2017, Dixon argues that his release date should be June 7, 2017. Dixon asserts that the BOP's calculation of his sentence fails to account for the fact that Judge Harwell ordered Dixon's October 18, 2016 sentence to run concurrent with the sentence imposed by Judge Wooten on September 21, 2016. In support of his claim, Dixon attaches a portion of the transcript from the hearing conducted by Judge Harwell on October 18, 2016, and argues that this transcript shows that there was an agreement between defense counsel, the prosecution, and the Court regarding Dixon's request for a sentence that would permit him to attend his daughter's high school graduation ceremony in June 2017. [R. 1, R. 1-1, Transcript] Although the primary relief sought by Dixon is release from prison on June 7, 2017, in the alternative, he requests the imposition of bond/bail or other temporary arrangements that would permit him to attend his daughter's high school graduation ceremony on terms of personal recognizance or U.S. Marshal Service custody, to be returned to FMC-Lexington at the conclusion of the ceremony to serve the remainder of his sentence.

## II. ANALYSIS

As a point of clarification, Dixon appears to be confused about the relationship between his sentences in his two separate criminal cases. He seems to be under the impression that, after his criminal conduct he committed while on supervised release in July 2015, he should have only be sentenced one time, in one case, in front of one judge for one supervised release violation. In his motion for expedited disposition, Dixon states that "[f]or reasons unknown to Petitioner, the identical matters were assigned to different Judges of the Florence Division of the District of South Carolina, rather than both reverting to the Judge who was required by law to hear the case of the Violation of Terms of Supervised Release." [R. 5, Motion at p. 2] However, Dixon overlooks that he was on supervised release in two separate criminal cases – his 2007 drug case and his 2011 escape case. Thus, his criminal conduct in July 2015 resulted in two separate supervised release violations, one in his 2007 drug case and one in his 2011 escape case. Accordingly, the imposition of two separate sentences for these two separate violations was appropriate.

Calculation of a federal prisoner's sentence, including both its commencement date and any credits for custody before the sentence is imposed, is determined by federal statute:

> (a) A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
>> (1) as a result of the offense for which the sentence was imposed; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

5

18 U.S.C. § 3585. The BOP implements § 3585 through Program Statement 5880.28.

Section 3858(a) establishes when a federal sentence commences. If a sentence is ordered to run concurrently with pre-existing sentence, that sentence begins to run when it is imposed. *Doan v. Lamanna*, 27 F. App'x 297, 299 (6th Cir. 2001). Thus, Dixon's sentence for the supervised release violation in his escape case (No. 4:11-CR-264-RBH) began to run on October 18, 2016, the date it was imposed.

Section 3585(b) establishes whether a defendant can obtain credit for time spent in custody before the sentence commences. Here, Dixon essentially claims entitlement to credit for the time he spent in custody between September 13, 2016 (the date Judge Wooten imposed Dixon's sentence for his supervised release violation in his 2007 drug case) and October 18, 2016, the date Dixon's sentence was imposed in his supervised release violation in his 2011 escape case. Dixon argues that he is entitled to this credit because Judge Harwell ordered that Dixon's October 18, 2016 sentence should run concurrently with his September 13, 2016 sentence.

There are only two ways a federal prisoner can receive credit for time spent in detention before a federal sentence is imposed:

> Backdating a federal sentence [to commence prior to its imposition] conflicts with 18 U.S.C. § 3585(a), which states that a federal prison term may commence only when the defendant is received into custody. Furthermore, the term "credit" can refer to different concepts. The award of "credit" against a sentence, as described under 18 U.S.C. § 3585(b), is within the exclusive authority of the BOP. In contrast, a court has authority, pursuant to Guidelines § 5G 1.3(c), to fashion a sentence that accounts for time already served, and "credit for time served on a pre-existing state sentence is within the exclusive power of the sentencing court." The Guidelines caution sentencing courts that, "[t]o avoid confusion with the Bureau of Prisons' exclusive authority provided under 18 U.S.C. § 3585(b) to grant credit ... any downward departure under application note [3(E) in § 5G1.3] be clearly stated ... as a downward departure pursuant to § 5G 1.3(c), rather than as a credit for time served."

6

*United States v. Gaskins*, 393 F. App'x 910, 914 (3d Cir. 2010) (citations and internal quotation marks omitted). Here, Judge Harwell ordered Dixon's supervised release violation sentence in his 2011 escape case to run concurrently with the sentence imposed by Judge Wooten in Dixon's 2007 drug case, but "even where a sentencing court orders a federal sentence to run concurrently with a pre-existing...sentence, the federal sentence is deemed to run concurrently only with the *undischarged* portion of the prior...conviction." *Belcher v. Cauley*, No. 0: 08-132-HRW, 2009 WL 464932, at *2-3 (E.D. Ky. Feb. 24, 2009) (noting that § 3585(a) bars a district court from ordering a federal sentence to commence prior to its imposition); see also *Pitman v. U.S. Bureau of Prisons*, No. 09-383-GFVT, 2011 WL 1226869 (E.D. Ky. Mar. 30, 2011) (same).

Judge Harwell's order for concurrent sentences therefore did not and could not cause Dixon's sentence for his violation of supervised release in his 2011 escape case to commence retroactive to the date that his sentence for his violation of supervised release in his 2007 drug case was imposed. Cf. *Morales v. Zenk*, 414 F. App'x 383, 386-87 (3d Cir. 2011); *Schleining v. Thomas*, 642 F. 3d 1242, 1244 (9th Cir. 2011); *United States v. Flores*, 616 F.2d 840, 841 (5th Cir. 1980) ("[A] federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served.").

Under Section 3585(a) a federal sentence cannot begin to run earlier than the date of its imposition, and a sentencing court is without authority to "backdate" a federal sentence to an earlier date. *United States v. Wells*, 473 F.3d 640, 645 (6th Cir. 2007) ("[t]he district judge had no statutory authority to order that the defendant's federal sentence should 'commence' [before the date his sentence was imposed]."); *United States v. Labeille-Soto*, 163 F.3d 93, 98-99 (2d Cir. 1998). Where, as here, the sentencing court directs that the defendant's federal sentence is to run concurrently with the *undischarged* term of a previously-imposed sentence, the federal sentence

runs concurrently only with the portion of the prior sentence that remains to be served. *Staley v. Patton*, No. 0:07-cv-122-HRW, 2009 WL 256745, at * 2-3 (E.D. Ky. Feb. 2, 2009). The BOP therefore correctly concluded that Dixon's sentence for his supervised release violation in his 2011 escape case commenced on October 18, 2016, the date that the sentence was imposed.

Although Dixon argues that the transcript of his sentencing hearing in front of Judge Harwell indicates an "agreement" between the Court, the prosecution and defense counsel that Dixon would be released in time to attend his daughter's high school graduation ceremony, an examination of the transcript does not actually show any such agreement. Although the issue of his daughter's graduation in June 2017 is raised by counsel and acknowledged by Judge Harwell, and Judge Harwell does agree that Dixon's sentence should be concurrent to the sentence imposed by Judge Wooten, Judge Harwell never states that he intended for Dixon to be released by June 2017 [R. 1-1, Transcript at p. 5-9]

More persuasive is the fact that Dixon filed a motion for clarification of his sentence in Case No. 4:11-CR-264-RBH on December 13, 2016, in which he similarly argued that the BOP was miscalculating his expected release date. *United States v. Dixon*, No. 4:11-CR-264-RBH [Motion, Entry No. 160] On January 5, 2017, Judge Harwell entered an order denying Dixon's motion, clearly stating that the Court's intention was that Dixon be imprisoned for 9 months from the date the sentence was imposed on October 18, 2016. [*Id*. at Entry No. 165] Specifically, Judge Harwell explained as follows:

> Defendant was sentenced to a 9 month term of imprisonment following the revocation of his supervised release on October 18, 2016, to run concurrently with a 9 month sentence imposed by Judge Wooten in another supervised release revocation case on September 13, 2016. Defendant contends that his release date should be the same for both supervised release revocation cases because this Court ordered his 9 month sentence to run concurrent to the 9 month sentence imposed by Judge Wooten. This Court, however, intended for Defendant to serve 9 months from the date the sentence was imposed in this case - October 18, 2016. The

> judgment was entered on October 20, 2016. The projected release date for Defendant as indicated on the Bureau of Prisons website is July 12, 2017, approximately 9 months from the date Defendants sentence was imposed in this case. Because it appears the Bureau of Prisons projects a release date for Defendant approximately 9 months from the date his sentence was imposed in this case, the Court finds no basis for the equitable relief requested by the Defendant.

[*Id.*] Thus, Dixon's argument that Judge Harwell intended that Dixon be released earlier than the release date calculated by the BOP is without merit.

In the alternative, Dixon requests that this Court make temporary arrangements, through bond, bail, or otherwise, to permit Dixon to attend his daughter's high school graduation ceremony and to be returned to FMC-Lexington to serve the remainder of his sentence after the ceremony. [R. 1 at p. 8] However, the Court does not have the authority to grant Dixon's request. Convicted persons have "no constitutional or inherent right ... to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Under 18 U.S.C. § 3622, the BOP has authority to grant to prisoners furloughs for a limited period for certain designated purposes, including "establishing or reestablishing family or community ties." 18 U.S.C. § 3622(a)(5). Pursuant to 28 C.F.R. § 570.33(d), the warden over the prisoner may authorize such a furlough. In addition, 28 C.F.R. § 570.37 provides that inmates may submit an application for a furlough to staff, who will review it for compliance with regulations and BOP policy. Thus, if Dixon wishes to seek a furlough, he should apply for a furlough to prison staff. Regardless, this authority to grant Dixon's requests lies with the warden and the BOP, not the Court.

### III. CONCLUSION

For all of these reasons, the Court finds that Dixon is not entitled to relief. Accordingly, **IT IS ORDERED** that:

1. Petitioner Dixon's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [R. 1] is **DENIED**;

2. Petitioner's Motion for Expedited Disposition [R. 5] is **DENIED**;

3. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

4. Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

Dated June 6, 2017.

*Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY